# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| COVENTRY'S DELI, *et al.*, | : |
| | : |
| Plaintiffs, | : |
| | : Case No. 2:21-cv-2708 |
| v. | : Chief Judge Algenon L. Marbley |
| | : Magistrate Judge Kimberly A. Jolson |
| STATE AUTO PROPERTY AND | : |
| CASUALTY INSURANCE, CO., | : |
| | : |
| Defendant. | : |

## OPINION & ORDER

This matter is before this Court on Defendant State Auto Property and Casualty Insurance, Co.'s ("State Auto") Motion to Dismiss. (ECF No. 22). For the following reasons, Defendant's Motion is **GRANTED**. Plaintiffs' Amended Complaint (ECF No. 20) is hereby **DISMISSED**.

### I. BACKGROUND

#### A. The Parties and Policies

This action has been filed by four businesses: Coventry's Deli, Joseph Anthony Hair Studio ("Joseph Anthony"), Van Joe LLC DBA Joseph Anthony Retreat Spa and Dry Bar ("Van Joe") and Steck Eye Care, LLC. (ECF No. 20 at ¶¶1–4). Plaintiff Coventry's Deli owns and operates a well-known delicatessen located in a high-rise office building in the heart of the Philadelphia, Pennsylvania business district. (*Id*., ¶ 1). Plaintiff Joseph Anthony is a day spa in Glen Mills and Center City Philadelphia, offering a host of salon, spa, and med spa services. (*Id*., ¶ 2). Plaintiff Van Joe is a full-service salon and spa located within the Springfield Country Club in Springfield, Pennsylvania. (*Id*., ¶ 3). And, Plaintiff Steck Eye Care is an eye care clinic located in the Mayfair Mall, in Wauwatosa, Wisconsin. (*Id*., ¶ 4). Defendant State Auto, meanwhile, is an insurance company organized under the laws of Iowa, with its principal place of business in Columbus, Ohio.

(*Id.*, ¶ 31). State Auto is authorized to write, sell, and issue insurance policies providing property and business income coverage in all 50 states, as well as the District of Columbia and Puerto Rico. (*Id.*). At all times material hereto, State Auto conducted and transacted business through the selling and issuing of insurance policies within Pennsylvania, Wisconsin and Ohio. (*Id.*).

In return for the payment of a premium, State Auto issued each Plaintiff several different insurance policies. (*Id.*, ¶¶ 32–35). There are five separate policies at issue in this case:

- The Coventry's Deli Policies: Renewal Policy Number BOP 2934541 01 for the policy period of June 1, 2019, to June 1, 2020, and Businessowners Renewal Policy Number BOP 2934541 02 for a policy period of June 1, 2020, to June 1, 2021, both of which included The Businessowners Special Property Coverage Form. (*Id.*, ¶ 32).

- The Joseph Anthony & Van Joe Policies: Renewal Policy Number BOP 2847543 04 S for a policy period of June 25, 2019, to June 25, 2020, and Renewal Policy Number 2847543 05 S for a policy period of June 25, 2020, to June 25, 2021, both of which include the Businessowners Special Property Coverage Form. (*Id.*, ¶ 34).

- The Steck Eye Care Policy: Businessowners Renewal Policy Number Renewal Policy Number BOP 2462397 12 for a policy period of August 25, 2019, to August 25, 2020, which includes the Businessowners Special Property Coverage Form. This policy has been in place since 2007. (*Id.*, ¶ 35).

Plaintiffs maintain that their policies did not exclude or limit coverage for losses from the spread of viruses. (*Id.*, ¶ 37). And, as a result, Plaintiffs represent that "[l]osses due to COVID-19 are a Covered Cause of Loss under the State Auto Policies within the Businessowners Special Property Coverage Form." (*Id.*, ¶ 38).

Each Policy provides commercial property coverage for "direct physical loss of or damage to" the types of property listed therein, including machinery, equipment, and outdoor furniture. (ECF No. 22 at 9). When a property detailed in the policy suffers "direct physical loss," the "Loss Payment" provision covers the cost to repair or replace the property. (*Id*.). In addition to this core coverage, each Policy provides various "Additional Coverages" including coverage for Business Income, Extended Business Income, Extra Expense, and Civil Authority, which apply during the period that the lost or damaged property is being repaired, rebuilt, or replaced. (*Id*.).

State Auto represents that "direct physical loss of or damage to" property is a threshold requirement for coverage under the Business Income, Extra Expense, and Civil Authority policy provisions. (*Id*.). Coverage under each of these policy provisions requires several things:

- Business Income Provision – Coverage for loss of business income due to (1) direct physical loss of or direct physical damage to property at the insureds' premises, (2) which then causes suspended operations, and (3) which results in a "period of restoration" during which the lost or damaged property is being repaired or replaced. (*Id*.).

- Extra Expense Provision – Coverage for expenses incurred due to the "direct physical loss or damage to property," that the insured otherwise would not have incurred. (*Id*.).

- Civil Authority Provision – Coverage for damage to property other than the insured premises, which then resulted in an action by a civil authority prohibiting access to its insured premises. (*Id*.).

In addition to these provisions, which are in each Plaintiffs' policies, Coventry's Deli's policy includes a further provision—Limited Extension for Food-Borne Illness Endorsement ("FBIE"). (*Id*. at 10). This provision covers a suspension of Coventry's's operations at its deli due to an order of civil authority or adverse public communication or media report resulting from the food

3

poisoning of a customer or exposure to an infectious disease at the described premises. (*Id*.). Each Policy also contains certain duties the insured must comply with as a condition precedent to coverage, including taking all reasonable steps to protect the covered property from further damage, and keeping a record of expenses necessary to protect the covered property. (*Id*.).

### B. The Closure Orders

In early 2020, the Covid-19 virus began ravaging the United States and the world at large. Considering its widespread impact, this Court need not detail the extent to the global pandemic (in which we are still living). The spread and presence of COVID-19 has caused civil authorities throughout the country to issue orders requiring the suspension of business at a wide range of establishments, including civil authorities with jurisdiction over Plaintiffs' businesses—Pennsylvania and Wisconsin. (ECF No. 20 at ¶ 10). The Closure Orders in both these jurisdictions began quite strictly, requiring complete closures of all non-essential business. (*Id*., ¶¶ 94–95, 107–109). As infection rates leveled, and a vaccine became available, these restrictions were lifted, and non-essential business were permitted to reopen in some limited capacity. (*Id*. at ¶¶ 99–102, 111). The lifting of these restrictions, however, was stalled as new Covid-19 variants arose and infection rates rose. (*Id*.). Ultimately, as of the dates of filing, the restrictions have generally been lifted, although many of the public health recommendations and/or restrictions remain in place (masking, plexiglass barriers, etc.). (*Id*., ¶ 106, 113).

Plaintiffs allege they have suffered direct physical loss or damage because of both the physical presence of Covid-19 in their properties and the business interruptions caused by the Closure Orders. (*Id*., ¶ 114). To the first point, Plaintiffs maintain that "the prolonged presence of COVID-19 in . . . Plaintiffs' insured properties made it unavoidable that individuals with COVID-19 or otherwise carrying the coronavirus . . . would be physically present at the insured premises

on various dates since the earliest days of the pandemic." (*Id.*, ¶ 120). Plaintiffs have been forced to close, reopen, close again, and reopen again, as well as having their employees test positive for the virus. (*Id.*, ¶¶ 134–135). Plaintiffs were required to implement deep cleaning processes, modify their HVAC systems, install air purifiers and plexiglass shields, among other measures. (*Id.*, ¶¶ 139, 142–43). Ultimately, Plaintiffs assert that "because the spread and presence of COVID-19 altered the structure of the air, the physical space, and property surfaces, there have been many . . . . structural alterations, changes and/or repairs made [to] the insured premises so that Plaintiffs can continue their business after experiencing direct property damage which was caused by COVID-19 and to avoid the imminent threat of further property damage." (*Id.*, ¶ 154). Similarly, Plaintiffs represent that the Closure Orders prohibited access to their properties, and the area immediately surrounding their properties, in response to dangerous physical conditions resulting from an alleged "Covered Cause of Loss." (*Id.*, ¶ 155).

Following these alleged losses, Plaintiffs submitted claims for loss to State Auto under their policies but State Auto denied their claims. (*Id.*, ¶ 167). Plaintiffs maintain that they reasonably believed State Auto would pay their business interruption claims, and its failure to do so is a direct breach of the parties' contract and has caused significant damages. (*Id.*, ¶ 173).

### C. Procedural Background

As a result of this alleged breach, on May 21, 2021, Plaintiffs filed suit in this Court against Defendant State Auto. (ECF No. 1). State Auto timely answered the Complaint with a Motion to Dismiss. (ECF No. 24). Before the Motion could be briefed, however, Plaintiffs amended their Complaint, which necessarily mooted Defendant's Motion. (ECF No. 20).

In the First Amended Complaint, Plaintiffs assert class and individual claims for breach of contract and declaratory judgment. (*See generally id.*). As relief, Plaintiffs seek an order certifying

5

the proposed nationwide Classes, judgment in their favor on Counts I-V, declaratory judgments on Counts VI-X, and any such other relief as may be just and proper. (*Id*. at 57–58). Defendant responded timely to the First Amended Complaint with another Motion to Dismiss. (ECF No. 22). Plaintiffs responded to Defendant's Motion on November 3, 2021, (ECF No. 27) and Defendant replied timely (ECF No. 30). After the Motion was fully briefed, the parties each filed several Notices of Supplemental Authority. (ECF Nos. 31–35).

Accordingly, given the foregoing, Defendant's Motion is now ripe for review by this Court.

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint for a failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). Likewise, under Rule 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Thus, Rule 8(a) "imposes legal and factual demands on the authors of complaints." *16630 Southfield Ltd., P'Ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 503 (6th Cir. 2013). To survive a motion to dismiss, a plaintiff must allege facts that, if accepted as true, are sufficient to "state a claim to relief that is plausible on its face." *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A complaint will not "suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement'" or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). Although the court "must accept all well-pleaded factual allegations in the complaint as true," the court "need not accept as true a legal conclusion couched

as a factual allegation." *Hensley Mfg.*, 579 F.3d at 609 (quoting *Twombly*, 550 U.S. at 555) (internal quotations omitted). In short, the plaintiff's complaint "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

### III. LAW & ANALYSIS

Defendant seeks the dismissal of all claims asserted against it, pursuant to Federal Rule of Civil Procedure 12(b)(6). (*See* ECF No. 22). Defendant argues that Plaintiff have failed to state a claim upon which relief can be granted. (*Id.*). Before delving into the parties' arguments, however, this Court must first conduct a choice of law analysis.

#### A. Choice of Law

Defendant argues that because there are three separate insurance contracts, each requires an individualized choice-of-law determination. (*Id.* at 12). Defendant maintains that the principal location of Coventry's Deli's, Joseph Anthony's, and Van Joe's businesses is Pennsylvania. (*Id.*). While the principal location of Steck Eye Care is Wisconsin. (*Id.*). As such, Defendant asserts that Pennsylvania law applies to the interpretation of the first three policies, while Wisconsin law applies to the interpretation of the fourth. (*Id.*, at 13). Plaintiffs, meanwhile, argue that a choice of law analysis is premature at this stage, particularly considering Defendant is an Ohio-based corporation. (ECF No. 27 at 6). Regardless of which states' law applies, however, Plaintiffs maintain that they have stated valid claims for relief. (*Id.*).

In a diversity case, this Court "appl[ies] the choice of law principles of the forum State, here Ohio." *Sims Buick–GMC Truck, Inc. v. Gen. Motors LLC*, 876 F.3d 182, 185 (6th Cir. 2017), *reh'g denied* (Nov. 30, 2017). Under Ohio law, "[t]he law of the state chosen by the parties to govern their contractual rights and duties will be applied unless either the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for

the parties' choice, or application of the law of the chosen state would be contrary to the fundamental policy of a state having a greater material interest in the issue than the chosen state and such state would be the state of the applicable law in the absence of a choice by the parties." *Sekeres v. Arbaugh*, 31 Ohio St. 3d 24, 25 (1987).

As a threshold consideration, Plaintiffs' contention that a choice of law analysis would be premature, is incorrect. Courts in this Circuit regularly conduct choice of law analyses at the motion to dismiss stage, and such an analysis is proper where the relevant facts are not disputed. *See e.g., Traverlers Prop. Cas. Co. of Am. v. Liebert Corp.*, 2:18-CV-367, 2018 WL 4604292, at *6 (S.D. Ohio Sept. 25, 2018) (conducting choice of law analysis to determine that Maryland law controls on motion to dismiss).

Turning to the facts of this case, it is clear that Pennsylvania and Wisconsin have the most significant relationship to the parties and events herein. The place of the alleged breach was Pennsylvania and Wisconsin, as that is where Plaintiffs exclusively operate. Moreover, it is the Closure Orders of these states that forms the bases, at least in part, of Plaintiffs' claims. And, although State Auto has its headquarters in Ohio, no other party is either incorporated in Ohio or has its principal place of business here. Rather, three of the Plaintiffs operate exclusively in Pennsylvania (Coventry's, Joseph Anthony & Van Joe) and one operates exclusively in Wisconsin (Sheck). State Auto operates in each of these locations.

Therefore, the Court finds that Pennsylvania law applies for Coventry's Deli's, Joseph Anthony's and Van Joe's claims and Wisconsin law applies for those claims asserted by Sheck.

### B.  Direct Physical Loss & Covid-19

Defendant argues that loss of use of Plaintiffs' property due to governmental orders does not constitute "direct physical loss of or damage to property," as required under the business

8

income, extra expense and civil authority provisions. (ECF No. 22 at 13). According to State Auto, when the policies are read as a whole, it is clear they require tangible, perceptible, alteration of physical conditions at the insured premises to receive coverage. (*Id*. at 14). Moreover, Defendant asserts that reimbursement for business income losses and extra expenses is limited by the "period of restoration," defined as commencing when property is physically lost or damaged and ending "when the property at the described premises should be repaired, rebuilt, or replaced." (*Id*.). Defendant emphasizes that the limiting provisions of the policies reinforce the intent to not cover mere loss of use. (*Id*.). Defendant cites a myriad of cases in both Pennsylvania and Wisconsin, wherein Courts held that the operative language in such a policy unambiguously requires "a distinct, demonstrable, physical alteration of the property." (*Id*. at 16–17). Moreover, argues Defendant, Plaintiffs' speculative allegations regarding the ubiquitous presence of Covid-19 fail to state a plausible claim for direct physical loss of or damage to property that preceded and caused suspended operations at any insured premises. (*Id*. at 18). Plaintiffs' suspension of operations, says Defendant, was motivated by compliance with governmental orders, not a scientific analysis of potential damage to unspecified pieces of property from the virus' presence. (*Id*. at 20).

In response, Plaintiffs argue that they have sufficiently plead direct physical loss or damage because the primary cause of their business interruption losses is both the actual presence of Covid-19 at the insured properties and the Closure Orders. (ECF No. 27 at 7–8). Regarding the actual presence of Covid-19, Plaintiffs maintain that the virus could constitute "physical loss or damage" in the same way invisible sources such as ammonia or carbon monoxide have been considered to make covered premises unusable, unsafe, or unfit for their intended uses. (*Id*. at 11). Plaintiffs argue that the First Amended Complaint alleges that viral particles were not merely "present" or "passing through," but rather were continuously present, emerging and re-emerging thereby

9

rendering the premises unsafe and unfit and therefore causing loss or damage. (*Id*. at 16). In support of this argument, Plaintiffs maintain three positions. First, they represent that under their respective policies, and considering the term's plain meaning, direct physical loss is not limited to structural alteration. (*Id*. at 16–18). Second, they emphasize that the policies' prescribed period of restoration does not imply a limit on coverage, but merely a time period for coverage. (*Id*. at 18–20). Third, they assert that because their policies afford coverage for *imminent* physical loss, coverage is contemplated not just where loss or damage actually occurs. (*Id*. at 20–21). Finally, Plaintiffs argue that all else aside, they had a reasonable expectation of coverage. (*Id*. at 24–26). Plaintiffs maintain that the omission of a communicable disease/virus exclusion is significant because State Auto did not define "direct physical loss of or damage to property," and extended coverage for "all-risks." (*Id*. at 24–25). Plaintiffs contend that even clearly written exclusions or limitations will not bind the insurer where the insurer or its agent has created in the insured a reasonable expectation of coverage. (*Id*. at 25).

Under the laws of Pennsylvania and Wisconsin, "the interpretation of a contract of insurance is a matter of law for the courts to decide.'" *Paylor v. Hartford Ins. Co.*, 640 A.2d 1234, 1235 (1994) (interpreting Pennsylvania law); *see Frost ex rel. Anderson v. Whitbeck*, 654 N.W.2d 225, 227 (Wis. 2002) (Under Wisconsin law "[t]he interpretation of an insurance policy is a question of law when no extrinsic evidence is introduced to interpret the wording of the policy"). Similarly, in both jurisdictions the language in insurance contracts is given its natural and ordinary meaning, and where unambiguous, should be given effect. *See Allstate Prop. & Cas. Ins. Co. v. Squires*, 667 F.3d 388, 390–91 (3d Cir. 2012); *see also* J.*G. v. Wangard*, 753 N.W.2d 475, 482 (Wis. 2008). "Ambiguity exists if the contract language is reasonably susceptible of different constructions and capable of being understood in more than one sense." *Whitmore v. Liberty Mut.*

*Fire Ins. Co.*, No. 07-5162, 2008 WL 4425227 at *3 (E.D. Pa. Sep. 30, 2008) (internal quotations omitted); *see Rural Mut. Ins. Co. v. Welch*, 633 N.W.2d 633, 636 (Wis. Ct. App. 2001). Where insurance contract language is ambiguous, however, it must be construed in favor of the insured and against the insurer. *Squires*, 667 F.3d at 390–91 (3d Cir. 2012); *Welch*, 633 N.W.2d at 636 (Wis. Ct. App. 2001).

Unfortunately for Plaintiffs, the case law is well developed and abundantly clear. Interpreting insurance contracts nearly identical to those at issue here, Courts interpreting both Pennsylvania and Wisconsin law have almost universally held that "the presence of COVID-19 does not constitute a physical loss of or damage to property because it does not alter the appearance, shape, color, structure, or other material dimension of the property." *Colectivo Coffee Roasters, Inc. v. Soc'y Ins.*, No. 2021AP463, 2022 WL 1758674, at *3 (Wis. June 1, 2022); *Froedtert Health Inc v. Factory Mut. Ins. Co.*, No. 21-CV-0713-BHL, 2022 WL 3213270 (E.D. Wis. Aug. 9, 2022) ("At the pleading stage, a plaintiff must do more than allege that the presence of COVID-19 caused physical loss or damage."); *Biltrite Furniture, Inc. v. Ohio Sec. Ins. Co.*, No. 20-CV-656-JPS-JPS, 2021 WL 3056191, * 5 (E.D. Wis. July 20, 2021) ([T]here is no physical damage to the store or items therein by virtue of the COVID-19 pandemic or the attendant closure order[.]"); *Newtown Athletic Club v. Cincinnati Ins. Companies*, No. CV 21-2662, 2022 WL 866410, *6 (E.D. Pa. Mar. 23, 2022) ("The presence of COVID-19 on properties is not enough to qualify as a physical loss . . ."); *Star Buick GMC v. Sentry Ins. Grp.*, 541 F. Supp. 3d 582, 591 (E.D. Pa. 2021) ("[T]he COVID-19 virus cannot be the basis for a physical loss."); *Moody v. Hartford Fin. Grp., Inc.*, 513 F. Supp. 3d 496, 506 (E.D. Pa. 2021) ("[Plaintiff's] theory that its loss of use or lost operations stemming from the government order is a covered loss under the

Business Income and Extra Expense provisions fails.").[1] In so holding, these Courts emphasis the plain, unambiguous meaning of "direct physical loss." *See Star Buick GMC*, 541 F. Supp. at 589 ("After considering the entire business income provision, this Court concludes that the plain meaning of the phrase "direct physical loss[]" requires an explicit nexus between the purported loss and the physical condition of the insured property."); *see also Biltrite Furniture, Inc.*, 2021 WL 3056191 at * 4 ("Direct physical loss . . . unambiguously requires some form of actual, physical damage to the insured premises to trigger coverage.").

This is the case regardless of whether Plaintiffs allege that their loses were the result of the Closure Orders or the physical presence of the Covid-19 virus on the covered premises. *Moody*, 513 F. Supp. 3d at 506 (E.D. Pa. 2021) ("[Plaintiff] separately alleges that the virus is on its property and has been damaged by it. . . . Setting aside the fact that this allegation contradicts its argument that its losses were caused only by the government orders, it also fails to plausibly allege direct physical loss or damage. Neither the presence of the virus nor an imminent threat thereof . . . has nearly eliminated or destroyed the property's functionality or rendered it useless or uninhabitable."); *Colectivo*, 2022 WL 1758674 at *1 (rejecting the argument that plaintiff suffered physical loss of or damage to its property because of the presence of "Covid-19 particles").

Plaintiffs argue that these cases are distinguishable because they involved policies with virus exceptions, and there was no such exception here. (ECF No. 22 at 23–24). That, however, is a misreading of these Courts' holdings. While numerous courts, applying Pennsylvania and Wisconsin law, have concluded that language in a virus exclusion unambiguously bars coverage,

---

[1] These cases comport with substantial precedent from Circuits across the country. *See Food for Thought Caterers Corp. v. Sentinel Ins. Co., Ltd.*, Case No. 20-cv-3418, 2021 WL 860345, at *4 (S.D.N.Y. Mar. 6, 2021) "[A] complaint which only alleges loss of use of the insured property fails to satisfy the requirement for physical damage or loss.") (collecting cases); *see also Sandy Point Dental PC v. Cincinnati Ins. Co.*, 488 F. Supp. 3d 690, 693–94 (N.D. Ill. 2020) ("This holding is consistent with other courts that have evaluated whether the coronavirus causes property damage warranting insurance coverage.") (collecting cases).

that is generally an alternative holding. *See e.g. Star Buick GMC*, 541 F. Supp. at 593 ("Assuming that [Plaintiff's] losses were covered under either the business income or civil authority provision, the virus exclusion would nevertheless bar recovery."). Moreover, "the absence of a virus exclusion provision 'has no bearing on the fact that [P]laintiffs' claims do not fall within the scope of a Covered Cause of Loss.'" *Newtown Athletic Club*, 2022 WL 866410 at *7 (quoting *Isaac's Deli, Inc. v. State Auto Prop. & Cas. Ins. Co.*, 539 F. Supp. 3d 424, 434 (E.D. Pa. 2021) (holding that the absence of a virus exclusion in plaintiff's policy provides no support for the conclusion plaintiff expected coverage to apply to business loss as a result of Covid-19))).

And, while Plaintiffs do cite one case that supports their position, this "Court is not persuaded . . . merely because one single . . . district court has come to another conclusion." *Biltrite Furniture, Inc.*, 2021 WL 3056191 at * 4 (rejecting *Studio 417, Inc. v. Cincinnati Ins. Co.*, 478 F. Supp. 3d 794 (W.D. Mo. 2020), where the Court found a direct physical loss to a restaurant where plaintiff alleged Covid-19 is "a physical substance" that lives on physical surfaces, making its property "unsafe and unusable").

Finally, Plaintiffs' reasonable expectation allegations do not save its claims, nor is discovery warranted. "Because the [policies] [are] unambiguous, for the reasons discussed [above], [Plaintiffs'] expectations of coverage were not reasonable. *See Fuel Recharge Yourself, Inc. v. AMCO Ins. Co.*, No. 20-4477, 2021 WL 510170 at *5 (E.D. Pa. Feb. 11, 2021) ("Because I have concluded that the policy provisions at issue unambiguously preclude coverage, I cannot find that Plaintiff's reasonable expectations [of coverage during the pandemic] were frustrated.").

Accordingly, because Plaintiff have failed adequately to plead direct physical loss or damage, their claims for coverage from these alleged losses are **DISMISSED**.

### C. Civil Authority Coverage

Defendant argues that for civil authority coverage to apply, access must be prohibited not merely limited. (ECF No. 22 at 28). The Closure Orders, represents Defendant, closed non-essential businesses but did not prohibit Plaintiffs from accessing their properties. (*Id.*). Moreover, Defendant maintains that there is no legitimate allegation in the First Amended Complaint that the virus is causing direct physical loss of or damage to other properties nearby. (*Id.*). Lastly, Defendant asserts that even if Plaintiffs did allege direct physical loss or damage to nearby properties, the Closure Orders were not issued as a result of any such loss or damage. (*Id.* at 29). Plaintiffs, meanwhile, argue that the policies make no reference to a complete prohibition of access. (ECF No. 27 at 29). Plaintiffs maintain that the relevant definitions of the term "prohibit" demonstrate that the term is susceptible to more than one reasonable construction and, therefore, is ambiguous. (*Id.*). Moreover, Plaintiffs offer numerous examples of nearby properties that similarly suffered direct physical loss of or damage as a result of the virus. (*Id.*).

Here again, the case law in both Pennsylvania and Wisconsin is abundantly clear. The civil authority provision does not cover Plaintiffs' purported losses because, for the reasons set forth above, Plaintiffs do not plausibly allege a "covered cause of loss." *See Isaac's Deli, Inc.*, 539 F.Supp.3d at 432–33 (concluding that because the plaintiff did not suffer a direct physical loss during the Covid-19 shutdowns, the plaintiff also failed to allege a "Covered Cause of Loss" so as to invoke the Civil Authority provision) (collecting cases); *see also Colectivo*, 2022 WL 1758674 at *2 ("Because Colectivo has identified no physical loss of or damage to its property or a surrounding property, the losses it alleges are not covered by the . . . civil-authority provisions.").

Moreover, even accepting Plaintiffs' allegation that it had a covered cause of loss and that a surrounding property had been damaged, the civil authority provision would still not apply because the "orders were not issued in response to dangerous physical conditions or to give any civil authority unimpeded access." *Star Buick*, 541 F. Supp. 3d at 592–93. "Rather, . . . the orders were issued, to protect the public and minimize the risk and spread of Covid-19 []." *Id*. (citing *Hair Studio 1208, LLC v. Hartford Underwriters Ins. Co.*, No. 20-2171, 539 F.Supp.3d 409, 422–23 (E.D. Pa. May 14, 2021) (determining that because the closure orders were issued to prevent the spread of the Covid-19 to surrounding properties, the claims fall[] outside the coverage of the civil authority endorsement)); *see also Biltrite Furniture, Inc.*, 2021 WL 3056191 at *6 (denying coverage under a civil authority provision, holding "the Emergency Orders were intended to prevent future harm—i.e., the increased rate of transmission of Covid-19, which, absent the Orders, was certain").

Accordingly, given their failure to allege a direct physical loss, Plaintiffs cannot be afforded coverage under the policies' civil authority provision, and their accompanying claims are hereby **DISMISSED**.

### D. "Sue & Labor" Provisions

Defendant argues that the "sue and labor" provision of the policies are not independent insuring agreements and do not afford a basis for recovery in the absence of otherwise covered loss or damage. (ECF No. 22 at 29). Because the sue and labor clause is not a coverage provision, and there is no coverage for Plaintiffs claims under the policies' insuring agreements, Defendant maintains that the clause cannot create such coverage. (*Id*.). Plaintiffs argue that they have alleged they incurred expenses in connection with reasonable steps to protect the covered properties in complying with the Closure Orders and otherwise suspending or limiting operations due to the

15

presence of and/or imminent threat of Covid-19. (ECF No. 27 at 31). These allegations, say Plaintiffs, are sufficient at the pleadings stage. (*Id.*).

Under the "sue & labor" provision, Plaintiffs must "[t]ake all reasonable steps to protect the Covered Property from further damage, and keep a record of [the] expenses necessary to protect the Covered Property . . . ." (ECF No. 20 at ¶ 20). As Defendant correctly contends, and as other Courts have found, this provision "does not, itself, provide any coverage. It simply imposes responsibilities on the insured while the claim is processed." *Round Guys Brewing Co. v. Cincinnati Ins. Co.*, No. CV 20-6252, 2021 WL 4306027, * 4 (E.D. Pa. Sept. 22, 2021) ("Because [Plaintiff] experienced no covered loss in the first place because there was no physical damage, the requirements to mitigate a covered loss are irrelevant. This provision, therefore, does not apply."); *see Colectivo*, 2022 WL 1758674 at *1, n. 4 (holding that a policy's "sue & labor" provision did not provide coverage, but "merely la[id] out certain obligations [plaintiff] has in the event of loss or damage to covered property").

Accordingly, because the loss or damage which Plaintiffs took measures to mitigate is not itself covered (as detailed above), Plaintiffs have no right to recoupment. *GTE Corp. v. Allendale Mutual Ins. Co.*, 372 F.3d 598, 618 (3d Cir. 2004). Therefore, Plaintiffs' "sue & labor" claims are hereby **DISMISSED**.

### E. Coventry's Deli's Food-borne Illness Endorsement

Finally, Defendant argues that the food-borne illness endorsement ("FBIE") provision in Coventry's Deli's policy does not apply where suspended operations do not result from conditions within the insured premises. (ECF No. 22 at 30). Defendant maintains that the government orders were not issued in response to any alleged disease at Coventry's Deli, but instead applied to all businesses throughout Pennsylvania, and would have applied regardless of whether Coventry's

Deli was exposed to the virus or not. (*Id*.). Moreover, Defendant asserts that COVID-19 is not a food-borne illness as prescribed under the policy, as it is transmitted through exposure to the airborne respiratory fluids of contagious individuals. (*Id*. at 31). Defendant highlights numerous other cases where Courts considering the same or similar policy provisions have recognized that the executive orders issued to mitigate the spread of the virus did not result from conditions specific to any location. (*Id*. at 31–32).

Plaintiffs, conversely, assert that the FBIE contains no limitation whatsoever that the risk insured must be related to food. (ECF No. 27 at 27). The provision, maintain Plaintiffs, applies to the suspension of operations at the described premises due to the order of a civil authority resulting from the actual or alleged exposure of the described premises to a contagious or infectious disease. (*Id*. at 28 (citing the parties' respective policies)). As this is precisely what occurred here, and the damages alleged were proximately caused by this exposure to a contagious or infectious disease, Plaintiffs contend that this provision applies, and coverage should not have been denied. (*Id*.).

The FBIE provision provides coverage where there has been a "suspension of operations at the described premises due to the order of a civil authority . . . resulting from the actual or alleged . . . [e]xposure of the described premises to a contagious or infectious disease." (ECF No. 27 at 28). The phrase "resulting from" suggests a requirement of proximate causation. *See Cher-D, Inc. v. Great Am. Alliance Ins. Co.*, No. 05-5936, 2009 WL 943540, at *7 (E.D. Pa. Apr. 7, 2009) (collecting cases from other jurisdictions interpreting the phrase "resulting from" as requiring proximate causation). The Closure Orders did not stem from exposure of any of Plaintiffs' properties to the COVID-19 virus; rather, the Orders would have been issued regardless of whether Plaintiffs' business experienced any such outbreak. *Isaac's Deli*, 539 F. Supp. 3d at 434. Moreover, as Defendant argues, this Court does not find that Covid-19 constitutes the type of

17

"food-borne illness" as contemplated by the Coventry's Deli's policy, as it is transmitted through exposure to the airborne respiratory fluids of contagious individuals. *Nguyen v. Travelers Cas. Ins. Co. of Am.*, No. 2:20-CV-00597-BJR, 2021 WL 2184878, at *34 (W.D. Wash. May 28, 2021). This conclusion comports with established precent across Circuits. *See Terry Black's Barbecue v. State Auto Mut. Ins. Co.*, 514 F. Supp. 3d 896, 909 (W.D. Tex. 2021) (finding no coverage under nearly identical provision in State Auto's policy because "the civil authority orders did not result from the actual or alleged exposure to COVID-19 at Plaintiffs' restaurants [but instead] were issued in response to the global pandemic"); *see also Wild Eggs v. State Auto Prop. & Cas. Ins. Co.*, 20- cv-501, 2021 WL 4234940, at *6 (W.D. Ky. Sept. 16, 2021) (same).

## IV.  CONCLUSION

For the reasons discussed above, State Auto's Motion to Dismiss (ECF No. 22) is **GRANTED**. Plaintiffs' Amended Complaint (ECF No. 20) is hereby **DISMISSED**.

**IT IS SO ORDERED.**

**ALGENON L. MARBLEY**
**CHIEF UNITED STATES DISTRICT JUDGE**

**DATED: September 28, 2022**